UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
                                                       :
TIMOTHY HECKE, Individually and      :
d/b/a RIC TOWER CREATIONS,            :
                                                       :
                  Plaintiff,         :
                                                       :    04 Civ. 1583 (JSR)
                -v.-                        :
                                                       :    <u>MEMORANDUM ORDER</u>
CLEAR CHANNEL COMMUNICATIONS, INC.,  :
                                                       :
                  Defendant.        :
                                                      :
------------------------------------------X
JED S. RAKOFF, U.S.D.J.

    Plaintiff Timothy Hecke and his sole proprietorship Ric Tower Creations allege that defendant Clear Channel Communications, Inc. ("Clear Channel") infringed their copyrighted radio preparation materials, in violation of 17 U.S.C. § 101 <u>et seq</u>, by authorizing its stations to use the materials without plaintiff's permission. Following discovery, defendant moved for summary judgment. For the reasons stated below, defendant's motion is granted.

    Timothy Hecke, also known as "Ric Tower," is in the business of creating "radio preparation materials," <u>i.e.</u>, briefing materials used by radio on-air personalities to augment their programs. Deposition of Timothy Hecke, 5/5/04, at 43. On August 1, 2000, Hecke, doing business as "Ric Tower Creations," contracted with Winstar Radio Networks, Inc. ("Winstar") to provide three daily sheets of radio preparation materials called "Dirt," "PowerSheets," and "Stupid News." Radio Services

Agreement, attached as Exhibit E to Def.'s Rule 56.1 Statement. Winstar paid an annual salary and in exchange obtained the right to distribute these programs to radio stations.  Id.

Plaintiff's theory of recovery rests on the premise that Winstar, on or about June 2001, breached its agreement with Ric Tower, effectively terminating the contract.  He alleges that, following this breach, Winstar and its successor in interest, Excelsior Radio Networks, continued to distribute PowerSheets to radio stations, including those owned by Clear Channel, although the use of these materials was now unauthorized.  On June 30, 2003, Hecke applied for copyright registration for 18 PowerSheets, receiving registration on July 30.  See Copyright Registration, 7/30/03, attached to Complaint as Exhibit B.  On October 16, 2003, Hecke applied for copyright registration for another 28 PowerSheets, receiving registration on October 30. See Copyright Registration, 10/30/03, attached to Complaint as Exhibit C.

However, following a trial in the companion case Hecke v. Excelsior, 03 Civ. 4121, the Court found as a matter of law that Winstar did not breach its contract with Ric Tower.  See Order, 12/10/04; transcripts, 12/9/04 and 12/10/04.  Plaintiff, who had a full and fair opportunity to litigate this issue in Excelsior, is thus collaterally estopped from relitigating it.  See Boguslavsky v. Kaplan, 159 F.3d 715, 719-20 (2d Cir. 1998).

Since Winstar did not breach the contract, any use of plaintiff's materials was not unauthorized. Accordingly, on this ground alone, this suit must be dismissed.

Alternatively, even had plaintiff proven breach of contract in the companion case, the Court would still grant summary judgment to defendants in this case. Plaintiff presented no evidence demonstrating that any Clear Channel stations actually used his materials subsequent to his obtaining copyright registrations. Indeed, there is no evidence in the record indicating how many of defendant's approximately 1200 radio stations even received the materials.[1] Three station representatives, collectively testifying on behalf of seven stations, said they received the materials from Excelsior, typically paying for them with several minutes per day of advertising time. However, all denied that their stations

---

[1] At oral argument, plaintiff complained that defendant had failed to comply with various discovery requests and misled plaintiff about its organizational structure from the start of this case. By leave of the Court, plaintiff submitted a letter brief, dated November 23, 2004, detailing his frustrations and asking the Court not only to forgive his failure to produce evidence in this proceeding, but also to begin discovery again by forcing defendant to give new responses to plaintiff's first set of interrogatories. On further scrutiny, however, it turns out that plaintiff had more than ample opportunity to pursue discovery and seek Court intervention, and simply chose to sit on his hands, despite the Court's granting repeated extensions of the discovery cut-off date. Plaintiff's November 23 application is thus more in the nature of a last-ditch effort to rescue a failing case than a legitimate request for renewed discovery, and for this reason, as well as its prejudicial impact on defendant, must be denied.

actually used the materials in any way subsequent to plaintiff obtaining copyright registration for them.  See Deposition of Thea Mitchem, 9/22/04, at 8-15; Deposition of Elroy Smith, 11/3/04, at 9, 18; Deposition of Kevin B. Jefferson, 10/21/04, at 42.

On these facts, no reasonable fact-finder could conclude that defendant and its stations committed infringement, which requires unauthorized copying of the copyrighted work.  Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 1999).  Copying can be proven indirectly, with evidence that "the person who composed the defendant's work had access to the copyrighted material and that there are similarities between the two works that are probative of copying."  Id. at 51 (quotation marks and citations omitted).  However, plaintiff cannot even identify any possibly infringing broadcasts with which to compare his work.[2]

Plaintiff argues for a presumption of actual use, because the stations paid for the materials with advertising time and because defendant and its stations have not maintained records permitting analysis of whether use took place.  There is some precedent, albeit not binding on this Court, for inferring use where it seems probable under the circumstances and where

---

[2] Plaintiff contends, without citing any case law to this effect, that it suffices that defendant and its stations were in the "chain of possession" of infringing materials.  But Jorgensen requires copying, not simple possession.

4

defendants fail to maintain records allowing actual proof of use. See <u>Hotaling v. Church of Jesus Christ of Latter-Day Saints</u>, 118 F.3d 199, 203 (4th Cir. 1997); <u>Arista Records, Inc. v. MP3Board, Inc.</u>, 2002 U.S. Dist. LEXIS 16165, at *11--*14 (S.D.N.Y. 2002). However, the testimony from three recipients of the service that they did not use it weakens any inference of use. Moreover, defendants in both <u>Hotaling</u> and <u>Arista</u> were aware of potential infringement, yet they neither removed the infringing material from public access nor kept records of possible infringing use. In contrast, there is no evidence that either Clear Channel or its stations were ever on notice that the material received from Excelsior was potentially infringing. While copyright infringement has no scienter requirement, <u>see</u> <u>Fitzgerald Pub. Co. v. Baylor Pub. Co.</u>, 807 F.2d 1110, 113 (2d Cir. 1986), there is no reason to impose an equitable evidentiary presumption upon an unknowing potential infringer. Without such a presumption, plaintiff cannot show copyright infringement.[3]

---

[3] In addition, without evidence of specific infringing activity, plaintiff cannot prove damages. Plaintiff is not eligible for statutory damages because this suit was commenced before any of the copyrights in question were registered and none of the copyrights was registered "within three months after the first publication of the work." <u>See</u> 17 U.S.C. § 412(2). Therefore, he can win only the actual damages he suffered plus the additional profits defendant wrongfully collected. 17 U.S.C. § 504. Plaintiff does not contend that he suffered any actual damage, and he has shown no "gross revenue reasonably related to the infringement." <u>Davis v. The Gap, Inc.</u>, 246 F.3d 152, 160 (2d Cir. 2001). Indeed, plaintiff has not submitted evidence of defendant's revenues at any corporate level.

Finally, even if plaintiff could show infringement by Clear Channel's stations, Clear Channel is insufficiently involved in its stations' business and programming decisions to be held liable. The stations make their own programming decisions, including deciding whether to contract for and use services such as plaintiff's. Deposition of Sean Compton, 10/14/04, at 64-66. A parent company can be held vicariously liable for its subsidiaries' infringing activities if it has both (1) "a direct financial interest in the infringing activity," and (2) "the right and ability to supervise the subsidiary, which is evidenced by some continuing connection between the two in regard to the infringing activity." Banff Ltd. v. Limited, Inc., 869 F. Supp. 1103, 1110 (S.D.N.Y. 1994). All the evidence in the record points to an utter lack of any "continuing connection" between Clear Channel and its stations in regard to programming decisions. See id. at 1110-11 (finding Express's parent company not vicariously liable for infringement because "the day-to-day decisions of Express are made by Express employees only").

Accordingly, defendant's motion for summary judgment is granted in full and the complaint is dismissed with prejudice. Clerk to enter judgment.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:   New York, New York

April 26, 2005